# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CATHERINE HOELSCHER,
        Plaintiff,

                                        Case Number: 09-11581

v.

                                        HON. MARIANNE O. BATTANI

COMMISSIONER OF SOCIAL       UNITED STATES DISTRICT JUDGE
SECURITY,
        Defendant.                    HON. VIRGINIA M. MORGAN
                                        UNITED STATES MAGISTRATE JUDGE
_____ /

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's 2005 application for social security disability benefits and supplemental security income (SSI). Plaintiff alleged that she became disabled as of 2002 because of musculoskeletal and emotional impairments. After a hearing before an ALJ with testimony from plaintiff and a vocational expert, the defendant found that plaintiff had severe impairments, could not perform her past relevant work, but could perform a significant number of limited light exertional level jobs, and therefore, was not disabled. (Tr. 17-26) Plaintiff contends that the determination is not supported by substantial evidence and that the ALJ improperly disregarded plaintiff's complaints of pain.. Defendant contends otherwise. For the reasons discussed in this report, it is recommended that the decision denying benefits be affirmed.

*Standard of Review*

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

*Background*

Plaintiff testified at the hearing before the ALJ. She was 39 years old at the time of her alleged onset date and 45 at the time of the ALJ's decision. She lives in Westland and graduated from high school. Plaintiff worked for more than ten years at Ford where she performed unskilled auto assembly work and is medically retired from there. (Tr. 25, 189, 447) She redeemed her worker's compensation in 2007 for $87,631. (Tr. 23) Plaintiff testified as to her

2

physical problems which included pain and weakness in her back, knees, shoulders, and feet, as well as urinary incontinence which had not improved despite surgery. (Tr 429-32, 433-35) Plaintiff also reported emotional impairments of depression, bipolar disorder, and anxiety. These resulted in difficulty making decisions, weight gain, lack of motivation, and fatigue. (Tr. 435-38) Plaintiff took time off work but stopped working because, although released to return to work, her employer could find no work which accommodated her restrictions. (Tr. 433) Plaintiff reported that she can take care of her needs, take care of her pet, perform light housework, and manage her finances. (Tr. 75-78, 425-6, 431, 438-440) She alternates between sitting and standing to remain comfortable and is limited in what she can lift or carry, noting that picking up a gallon of milk is difficult. (Tr. 431)

The vocational expert John Stokes was asked to assume a person of plaintiff's education, capable of performing a limited range of light, simple, repetitive work which allowed her to alternate between sitting and standing every 30 to 45 minutes, and which did not require above shoulder lifting. Further, there would be no repetitive use of shoulder, no work at a production pace, no work with the general public or close contact with coworkers, no work as part of team where others would be dependent upon this person's performance. (Tr. 448-451) The vocational expert testified that such a person could do light and sedentary work as an office helper, welding machine feeder, document preparer, or inspector. (Tr. 449-450) A significant number of the jobs were performed during the day and would allow the use of the restroom every two to three hours. (Tr. 455)

*Medical Evidence of Physical Impairments*

Medical records show that plaintiff has treated for her arthritis and instability in her knees

with Dr. Anderson, her orthopedist in Ypsilanti. (Tr. 83) In February 2002, he restricted her to work which permitted her to alternate between sitting and standing. (Tr. 123-126) Plaintiff's medical records note that she had rotator cuff tears for which she underwent bilateral repair surgery in 2002, in May and September. (Tr. 113-121) She continued to complain of pain and in September 2003, after MRI testing and physical therapy (Tr. 95, 119) a third surgery was performed on her right shoulder. She also had a cervical disectomy and fusion. (Tr. 154, 157) Dr. Anderson stated in November 2003 that she was regaining strength and in December, 2003, recommended that she return to light duty work. (Tr. 98-99) He reiterated this opinion in March 2004–that plaintiff could work subject to limitations with her knees and shoulders. (Tr. 97) Her MRI in April 2004 showed the fusion at C6-7 but no other significant degenerative findings. (Tr. 132, 138) Plaintiff reported that she was walking a quarter mile three times a week in May, 2004.

Plaintiff's treating doctor is Dr. Sheremeta. In September, 2004, plaintiff was seen for shoulder restrictions. She also had ingrown toenails and had trouble walking. The notes reflect a diagnosis of bipolar disorder but her stress had decreased and she was sleeping better. Her wight was 180, her Blood pressure 143/83, and she had some stiffness in her neck with movement. (Tr. 129)

In February, 2005, plaintiff received an injection for her shoulder pain from Dr. Anderson. (Tr. 94) In March, 2005, Dr. Anderson added the restriction that she could not lift her arms above shoulder level. (Tr. 92) She was treated for "garden variety incontinence" in 2005 and 2007. She had done well after the 2005 treatment but the condition re-occurred. (Tr. 226-228, 238-239) Subsequently, Dr. Anderson completed forms indicating that it was his opinion that she could not

4

do even sedentary work on a sustained basis. (Tr. 285-95, 360-370).

Work records indicate that plaintiff was authorized to return to work in April, 2004, but that no work was available which would accommodate her restrictions. (Tr. 130, 132, 139)

In March, 2005, Dr. Choi, a state agency physician, reviewed the record evidence and concluded that plaintiff was able to perform a range of light work, with postural limitations and manipulative restrictions. (Tr. 206-212)

*Records of Mental Health Treatment:*

Plaintiff was treated by Dr. Bucknam, a psychiatrist, in connection with her mental condition related to her physical pain and a history of sexual abuse. (Tr. 177-202) Plaintiff reported that she had seen Dr. William Bucknam, M.D. in 2005 for major depressive disorder and difficulty getting along with her supervisor who had called her names. (Tr. 83) Dr. Bucknam prescribed Effexxor, Wellbutrin, and Klonopin. Id. In June, 2003, plaintiff's mental condition is described as improving as her pain becomes better controlled. In May, 2004, plaintiff reported that she was "pleased" with her psychotropic medication. Dr. Bucknam did not opine that plaintiff was unable to work but that she should work only during the day. (Tr. 173, 188, 194) In December, 2004, plaintiff's depression was much better, she was better groomed and had lost weight. (Tr. 183) She still had a general distrust of people but continued to improve. (Tr. 185) Her last date of treatment with Dr. Bucknam was in December, 2004 at which time she was on Clonaepam, Wellbutrin, and Effexor.

Plaintiff underwent a consultive examination by Dr. Baddigam in May, 2005. She complained of anxiety and depression, as well as helplessness and hopelessness. However, she had good memory and judgment. The diagnosis was panic disorder with agoraphobia, major

depression and a GAF of 50 (serious symptoms). Dr. Tien, a psychiatrist, reviewed the record evidence and concluded that plaintiff had moderate restrictions in areas like carrying out detailed instructions, maintaining attention and concentration, and independent goal setting. But, Dr. Tien found that plaintiff could perform a wide range of unskilled tasks in a a regular work environment. (Tr. 282)

Plaintiff was referred to Primacare shortly before her hearing in 2008. It was noted in the intake assessment that she was on medical retirement from Ford but felt she was too young to be retired. (Tr. 354) Plaintiff reported mood swings, anger, depression and anxiety due to life stressors, and that her boyfriend is not liked by her family. (Tr. 354) She reported fleeting suicidal ideation. (Tr. 355) Her GAF was assessed at 49, with a 60 within the last year. (Tr. 359) She saw a psychotherapist four times prior to the hearing. (Tr. 414) The diagnosis was panic disorder with agoraphobia and major depression in partial remission. (Tr. 418)

*ALJ's Opinion*

The ALJ found that plaintiff had severe disorders of the back, knee, depression, anxiety, bipolar disorder, hypertension, urinary incontinence, residuals of cervical disc fusion, and of post rotator cuff tears. However, plaintiff's conditions did not meet the Listings. The ALJ further found that Dr. Anderson's later conclusions that she was completely disabled were not entitled to significant weight because neither the objective medical evidence and Dr. Anderson's treatment notes do not contain the limitations reported. (Tr. 24) With respect to the mental health records, the ALJ determined that the GAF of 49 reported was inconsistent with plaintiff's activites, appearance, and responses. She had appropriate affect, was appropriately groomed, had normal language, thought processes, and memory. (Tr. 24) In addition, the treatment notes of

6

Dr. Kodali do not support the doctor's conclusion. (Tr. 371-375) "Given the inconsistencies between the testimony of the claimant and medical record, the [ALJ assigned] great weight to the treatment notes and only limited weight to the testimony of the claimant." (Tr. 24) Considering the reports of the consultants, the medical records, and plaintiff's daily activities, the ALJ determined that plaintiff could not perform her past relevant work but could perform other work which existed in significant numbers, that is general office clerk (4900 jobs regionally), welder/sorter/machine tender (1650 regionally). (Tr. 25)

Plaintiff argues that the ALJ's determination that plaintiff could do a limited range of light work is not supported by substantial evidence. Plaintiff contends that the opinions of Dr. Anderson and Dr. Kodali were not given appropriate weight, and that the ALJ failed to appropriately assess plaintiff's credibility. These factors rendered the hypothetical question posed to the vocational expert as not accurate. Thus, plaintiff argues, she is entitled to benefits.

**Discussion**

*Medical Evidence Supports the ALJ*

Plaintiff argues that the treating physician's testimony was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such

7

opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987).  The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.  Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris, 756 F.2d at 435).

Here, Dr. Anderson's contemporaneous opinions indicated that plaintiff merely needed a job with restriction which included the ability to sit and stand alternately.  His treatment records did not include any objective testing or other evidence that would support complete disability. He recommended that she return to light duty work after her surgery.  The ALJ carefully considered the medical record, the notes, and the other evidence and reasonably concluded that Dr. Anderson's subsequent opinion that plaintiff could not work was entitled to little weight.

In addition, Dr. Kodali expressed his opinion on his first contact with plaintiff in February, 2008.  He was not at that time a treating physician and it was not improper for the ALJ to accord the opinion little weight.  Plaintiff had been treating, successfully, with a prior psychiatrist, was on medications that she found effective, and had ceased regular visits some time before.  While plaintiff then saw Ms. Diebboll four times shortly before her hearing, it does not appear that Ms. Diebboll concluded that plaintiff was disabled or that even if she did that Ms. Diebboll is an acceptable medical source.  The ALJ's determination is supported by substantial evidence.

*Vocational Evidence*

In addition, the ALJ took into account plaintiff's psychiatric limitations, as well as her physical impairments, in limiting her work to the simple repetitive tasks identified by the vocational expert. At the hearing, the vocational expert took into account plaintiff's physical impairments and postural limitations.  In addition, he noted that plaintiff would be restricted from

a variety of stresses such as production work, contact with the public, limited contact with coworkers, and performance of jobs only in the daytime. Plaintiff argues that the hypothetical question did not accurately describe her limitations in that she had a moderate impairment of functioning in concentration, persistence and pace. The ALJ took that into account in limiting her to unskilled, simple work, limited public contact, and no production requirements and low stress. The opinion of the reviewing psychologist, is in accordance with this determination. No evidence is shown to merit either remand or an award of benefits in this regard. The restrictions imposed by the ALJ and the jobs to which she was limited by the vocational expert adequately compensated for her impairments.

*Plaintiff's Complaints of Pain*

Plaintiff claims the ALJ did not properly evaluate her credibility and complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464. In addition, in Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain.

There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Here the ALJ found that plaintiff's subjective complaints were not fully supported by the objective medical evidence. See discussion above.

*Conclusion*

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                        S/Virginia M. Morgan
                                        Virginia M. Morgan
                                        United States Magistrate Judge

Dated: April 22, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on April 22, 2010.

                                                                               s/Jane Johnson
                                                                               Case Manager to
                                                                               Magistrate Judge Virginia M. Morgan